UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL A. MCGOVERN,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:11-cv-05148-RBL-KLS

REPORT AND RECOMMENDATION

Noted for March 16, 2012

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  This matter has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing

the parties' briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Court's review, recommending that for the reasons set forth below,

defendant's decision to deny benefits should be reversed and this matter should be remanded for

further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

        On August 24, 2004, plaintiff filed an application for disability insurance benefits,

alleging disability as of July 10, 2002, due to a low back injury.  See Administrative Record

("AR") 74, 122, 538.  His application was denied upon initial administrative review and on

reconsideration.  See 61, 64, 538.  A hearing was held before an administrative law judge

REPORT AND RECOMMENDATION - 1

("ALJ") on June 21, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 577-608.

On August 9, 2007, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 22, 2009, making the ALJ's decision defendant's final decision. See AR 5, 538; 20 C.F.R. § 404.981. Plaintiff appealed defendant's decision to this Court, which on November 19, 2009, upon the stipulation of the parties, remanded the matter to defendant for the purpose of conducting additional administrative proceedings. See AR 643-45. On December 7, 2009, the Appeals Council vacated the ALJ's August 9, 2007 decision, remanding the matter to the same ALJ for the purpose of conducting further proceedings in accordance with the Court's remand order. See AR 638, 640-42.

On August 10, 2010, a new hearing was held before that ALJ, at which plaintiff, again represented by counsel, appeared and testified, as did a different vocational expert. See AR 689-731. On October 22, 2010, the ALJ issued another decision, in which she once more determined plaintiff to be not disabled. See AR 538-49. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984. The ALJ's decision therefore became defendant's final decision after sixty days. Id. On February 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1. The administrative record was filed with the Court on July 20, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's second decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in failing to find plaintiff's pain disorder was a "severe" impairment; (2) in evaluating

the medical evidence in the record; (3) in assessing plaintiff's credibility; (4) in evaluating the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity; and (6) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. <u>See</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.    <u>The ALJ's Step Two Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See</u> <u>id.</u> At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not

"significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a de minimis screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of multi-level lumbar degenerative disc disease status-post two surgeries, a developmental reading disorder, a disorder of written expression, and an adjustment disorder. See AR 541. Plaintiff argues the ALJ also should have found her pain disorder to be severe as well, but fails point to any evidence in the record that such a disorder had more than a minimal impact on his ability to work, or provide any specific argument regarding the same. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 4

In addition, any error the ALJ made in failing to specifically discuss plaintiff's diagnosed pain disorder at step two was harmless. In late April 2005, plaintiff was diagnosed in part with a pain disorder associated with both psychological factors and a general medical condition. See AR 495. He also was given a global assessment of functioning ("GAF") score[1] of 55 (see AR 496), indicating "'[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34).

As pointed out by defendant, however, the ALJ did not stop the sequential disability evaluation process at step two, but went on to consider the above evidence at the later steps of that process.[2] See AR 544, 546-47. Indeed, the ALJ gave "great weight" to the report in which the above pain disorder diagnosis and GAF score was provided, noting correctly that the latter score reflected "only *moderate* symptoms or *moderate* difficulties in social or occupational functioning," stating further that she was accounting for such symptoms and difficulties in the residual functional capacity assessment she set forth in her decision. AR 546-47 (emphasis in original). Plaintiff has not shown that that assessment – addressed in further detail below – is inconsistent with the above GAF score. In addition, while also as discussed in further detail

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

[2] See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting them at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider claimant's obesity at step two harmless, because ALJ did not err in evaluating claimant's impairments at later steps).

below the ALJ limited plaintiff to performing only light work, the examining medical sources who assessed the GAF score expressly noted, as the ALJ pointed out, that if plaintiff "chooses to participate in the [recommended pain rehabilitation] program in good faith, he should progress to a light to medium category of work." AR 500, 547.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ in this case stated she was incorporating in her second decision the "discussion and summary of the medical evidence" in the record contained in her prior decision, in addition to considering "additional evidence received in connection with the remand hearing." AR 543. Plaintiff takes issue with the ALJ doing so, arguing the ALJ was "obviously incorrect" in finding in relevant part as follows in her prior decision:

> . . . X-rays in August 2002 showed degenerative disc disease at L3-4; an MRI showed multi-level degenerative changes, most severely disc herniations at

L3-L4-5 that possibly compromised the nerve roots. Michael Buben, D.O., thought that the claimant could not return to work; he did not specify any limitations (exhibit 3F). Although these findings are not supportive of disability, they are consistent with a level of back pain that would interfere with the claimant's return to the vigorous occupation of commercial fishing.

AR 14; ECF #14, p. 7. Again, however, plaintiff's argument lacks the required specificity. See Carmickle, 533 F.3d at 1161 n.2; Paladin Associates., Inc., 328 F.3d at 1164; Kim, 154 F.3d at 1000.[3] The same is true with respect to plaintiff's statement that the ALJ also was "obviously incorrect" in finding as follows in her most recent decision:

. . . Despite his reports of relatively serious problems, treating and examining physicians found only mild objective findings and observed no major difficulties with functioning during examinations. Diagnostic findings from August 2002 showed multilevel degenerative changes and a herniated disc at L4-5 that was possibly compromising the nerve roots. . . .

AR 543.[4]

Next, plaintiff argues that while the ALJ discussed in her prior decision the September 2002 opinion of Jon C. Kooiker, M.D., that he was "severely disabled" and "unable to work at this time" (AR 14, 157), she failed to state any convincing reason for rejecting it in her current decision. But as noted above, the ALJ expressly stated she was incorporating her prior discussion and summary of the medical evidence in the record, which naturally includes as well

---

[3] Nor does the undersigned find the record supports plaintiff's argument here. First, Dr. Bubon merely opined that plaintiff could not "*return* to work," and not that he was precluded from *all* work. AR 154 (emphasis added); see 42 U.S.C. § 423(d)(1)(A) (to be disabled, claimant must be unable to "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment") (emphasis added); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Thus, the ALJ correctly noted that Dr. Bubon's opinion dealt with plaintiff's ability to return to his past work. In addition, as noted by defendant, Dr. Bubon only "certified that [plaintiff] could not work for one additional week." AR 154; see Tackett, 180 F.3d at 1098 (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or has lasted or can be expected to last for continuous period of not less than twelve months).

[4] Plaintiff's reference to this portion of the ALJ's decision, furthermore, is incomplete, as the ALJ expressly pointed out a number of additional instances in the record where the medical evidence revealed only normal or at most mild objective findings. See AR 543-44. Thus, read in proper context, the ALJ's statement regarding "mild objective findings" and no "observed . . . major difficulties with functioning during examinations" by treating and examining physicians is not incorrect or without substantial evidentiary support.

REPORT AND RECOMMENDATION - 8

her evaluation thereof. Plaintiff does not provide any basis for overturning the ALJ's rejection of Dr. Kooiker's opinion, nor does the undersigned find any.[5]

Plaintiff goes on to argue the ALJ erred by not mentioning evidence in the record that he did not get complete pain relief from the epidural injections he received. The ALJ, however, did clearly and accurately note this evidence. See AR 543-44. Plaintiff further argues that while the ALJ noted in her prior decision that a March 2004 lumbar MRI "showed chronic disc bulging at L4-5 with foraminal narrowing and fibrosis, and disc protrusions at L3-4 and L5-S1," but that it revealed "no evidence of nerve compromise" (AR 15), she merely mentioned the fact of a lack of evidence of nerve compromise in her most recent decision (see AR 544). Plaintiff, however, has not shown how this difference actually tainted the ALJ's analysis of the medical evidence in the record as a whole. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability). [6]

The undersigned also finds no fault in the ALJ not mentioning certain objective medical findings from Paul J. Allen, M.D., Robert G.R. Lang, M.D., and Rebecca J. Peterson, A.R.N.P. (see AR 252, 332, 341, 346),[7] given that once more the mere existence of an impairment, or of symptoms related thereto, is insufficient proof of disability, without evidence of any actual work-related limitations. See Matthews, 10 F.3d at 680. In addition, while the undersigned does agree

---

[5] Plaintiff asserts, without explanation, that the ALJ failed to provide a proper reason for rejecting the opinion of Dr. Kooiker in her prior decision. But the ALJ specifically rejected that opinion because it "was not explained." AR 14. This was proper, given that, as noted above, an ALJ need not accept the opinion of even a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Indeed, Dr. Kooiker's opinion is for the most part devoid of supporting objective findings.

[6] For the same reason, the undersigned also rejects plaintiff's argument that the ALJ erred by stating "the objective medical evidence [did] not support a finding that he was precluded from all levels of exertional activity" (AR 544), merely because the above MRI evidence may provide some objective evidentiary support for a determination that he has a medical basis for his pain complaints.

[7] The pages of the record plaintiff attributes to Dr. Lang, actually appear to be progress notes Ms. Peterson provided. See AR 332, 346.

REPORT AND RECOMMENDATION - 9

with plaintiff that the ALJ's characterization of evidence of limited range of motion found by Dr. Allen (see AR 367) as being his own subjective complaint was error, such error was harmless, as there is no indication it had any impact on the ALJ's ultimate disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding that any error on part of ALJ would not have affected "ALJ's ultimate decision.").

In her prior decision, the ALJ found in relevant part as follows:

> The claimant was evaluated by John Maxwell, M.D., on August 19, 2005. As noted at other examinations, the claimant had a limp on the left leg and limited range of motion. Dr. Maxwell opined that the claimant could not perform heavy work, but he could work as a security guard (exhibit 22F). On September 9, 2005 the claimant was seen by Stephen Settle, M.D., who thought that the claimant would lift up to 20 pounds (exhibit 23F). These report [sic] suggest a capacity for light work, but his overall symptoms make a sedentary restriction more likely.

AR 16. Plaintiff argues the ALJ erred in not mentioning Dr. Maxwell's finding that his "[b]ack movements are so restricted we cannot do foraminal compression findings" (AR 401), but it is not clear at all that such a finding is translatable into an actual work-related limitation. Indeed, in terms of such limitations, Dr. Maxwell merely opined that plaintiff would "not be able to do any heavy work," but he "could do the work as a security guard" (AR 404), which, as noted by the ALJ, would "suggest a capacity for light work" (AR 16). Similarly, the ALJ did not err in failing to mention that Dr. Settle noted plaintiff had "some findings objectively demonstrating a chronic left L5 radiculopathy," as no showing has been made – as discussed in further detail just below – that the ALJ failed to properly account for the actual work-related limitations Dr. Settle did find plaintiff had.

Plaintiff further faults the ALJ for not specifically mentioning Dr. Settle opined that he

REPORT AND RECOMMENDATION - 10

"would not be able tolerate anything that required repetitive bending or twisting," and "would do best in a job that allowed him to change positions frequently." AR 416. But, once more, any error on the part of the ALJ here was harmless, as the ALJ expressly found plaintiff was unable to perform any repetitive bending or twisting in her most recent decision. See AR 542. Further, there is nothing to indicate the ALJ's determination that plaintiff should change positions every 20 to 30 minutes is inconsistent with Dr. Settle's opinion that plaintiff would do best in a job that allows him to change positions frequently, as Dr. Settle did not define what he meant by the term "frequently". See AR 416; see also Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, court must uphold ALJ's determination).

Plaintiff next argues in relevant part as follows:

> In her prior decision, the ALJ erred by failing to discuss all of the findings of [Patrick J.] Halpin[, M.D.], who on August 23, 2006 noted that [plaintiff] "stands with a hunched-over type stance and walks with an antalgic limp," and he "gets pain with straight leg raising when in a sitting position." ([AR] 479). The ALJ also failed to mention that Dr. Halpin diagnosed [plaintiff] with residual neuritis from his nerve injuries related to the herniated discs. ([AR] 479). In her current decision, the ALJ again does not mention any of these findings.
> In her prior decision, the ALJ briefly discussed the medical evidence from [Antoine Douglass] Johnson[, M.D.], noting twice that he was treating [plaintiff] with "medication management," ([AR] 15-16). However, the ALJ never mentioned that Dr. Johnson was prescribing narcotic medication to [plaintiff] to treat his severe pain ([AR] 378-79, 390-91, 458) . . .

ECF #14, p. 10. Once more, though, in regard to the above findings from Dr. Halpin, the mere existence of an impairment or symptoms stemming therefrom, is insufficient proof of disability or significant functional limitations, absent some evidence linking those findings to actual work-related restrictions. However, Dr. Halpin gave no indication he felt plaintiff had any such actual restrictions. See AR 479. As for the evidence from Dr. Johnson, the mere fact that plaintiff may have been prescribed narcotic medication – other than perhaps indicating he did have a medical

impairment – does not mean his ability to work was significantly impacted.  As such, no error by the ALJ is found here.

Plaintiff challenges as well the following finding made by the ALJ in her prior decision:

. . . In July 2004 the physical therapist[, Ernest D. Geiger,] reported that the claimant was limited to "below sedentary level."  More specifically, the claimant could sit and stand only 30 minutes at a time.  He could not lift, but could carry 17.5 pounds (exhibit 18F:1-6).  That assessment is given some weight, but medical treating sources reported that the claimant had normal gait and good motor strength (exhibit 19F:13, 18).  Further, the claimant has reported daily activities that represent sedentary levels.  That does not entirely support the therapist's functional assessment.

. . .

On November 22, 2005, the claimant had a physical capacity evaluation at Washington Physical Therapy.  [Mr. Geiger] concluded that the claimant could not perform any work because he could not walk for one mile, stand for 30 minutes, and he could not lift any weight.  He could carry up to 17.5 pounds.  He also failed to meet other minimum criteria of the "demand minimum functional capacity" (DMFC) required for work (exhibit 25F).  This assessment is similar to the earlier review (exhibit 18F).  The DMFC is apparently the brainchild of a medical source published in a professional trade journal (exhibit 25F:6).  It is not recognized as definitive, however.  The conclusions by the therapist are not given much weight on that basis.

Turning to the specific test results noted by [Mr. Geiger], the claimant could sit and stand/walk throughout an 8-hour workday, with frequent changes of position.  Again, he could carry 17.5 pounds but he could not lift any weight (exhibit 25F:7).  That is considered, but the claimant's purported inability to lift *any* weight is not consistent with his activities and that assessment probably relied on observations of the claimant's exaggerated pain behavior.  On the whole, this functional assessment is consistent with sedentary work and additional restrictions that are included in the residual functional capacity.  In November 2005 a vocational rehabilitation counselor agreed with those findings (exhibit 26F); there was no particular basis for that opinion, but it seemingly accepts a restriction to sedentary-level capacity.

AR 15-16 (emphasis in original).[8]  The undersigned agrees with plaintiff that the fact that he may have been noted to have normal gait and good motor strength are not alone sufficient to discount

---

[8] The ALJ did not mention or discuss this evidence in her most recent opinion.

REPORT AND RECOMMENDATION - 12

the credibility of Mr. Geiger's July 2004 findings, particularly given that the motor strength findings seem to only concern plaintiff's lower extremity strength (see AR 341, 346), and thus provide little indication of plaintiff's actual ability to sit, lift or carry.  In addition, the fact that plaintiff reported having engaged in "daily activities that represent sedentary levels" is also an improper basis upon which to discount Mr. Geiger's findings, since the ALJ in her most recent decision found plaintiff could actually perform light work.  See AR 542.  Nor, as plaintiff points out, does the record necessarily establish those activities were performed in a manner or to an extent that is equivalent to performing sedentary work, let alone performing it full-time.  See AR 94, 96-101, 108, 119, 122, 588-90, 593, 595-99, 701-06, 709-10, 713-17.

The ALJ's reasons for rejecting the late November 2005 physical capacity evaluation Mr. Geiger also conducted (see AR 427-35) are for the most part improper as well.  The undersigned again agrees with plaintiff that the ALJ's statement that the method of evaluating the capacity for work employed by Mr. Geiger was "apparently the brainchild of a medical source published in a professional trade journal" and thus "not recognized as definitive" (AR 16), was not a valid basis for rejecting the findings produced thereby.  Specifically, just because a method of evaluation is not "definitive" or has been published in a trade journal, this does not necessarily mean that it lacks utility in the Social Security disability context or that it cannot provide accurate clinical findings or vocational data.  The undersigned also finds inappropriately speculative the ALJ's rejection of the lifting restriction imposed by Mr. Geiger on the basis that he "probably relied on [plaintiff's] exaggerated pain behavior" (Id.), given that the ALJ cites no actual evidence of such behavior or of Mr. Geiger's reliance thereon in the record.

The undersigned disagrees, however, with plaintiff's assertion that Mr. Geiger's opinion that he could not lift any weight is fully consistent with his reported activities of daily living, as

plaintiff himself testified that he was able to lift "maybe 15 pounds," at least "from table height." AR 590; see Morgan, 169 F.3d at 601-02 (ALJ did not err in rejecting physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); Magallanes, 881 F.2d at 754 (ALJ properly rejected physician opinion in part because it conflicted with claimant's subjective complaints). As such, the undersigned also disagrees with plaintiff that Mr. Geiger's opinion that he would be "unable to return to work at any capacity" is adequately supported, given that Mr. Geiger based this "on the strength classifications as established by the Dictionary of Occupational Titles" (AR 317; see also AR 432), and that his other reported findings are not necessarily inconsistent with an ability to perform a range of sedentary work (see AR 313-28, 428-35).[9]

Nevertheless, as discussed above, the majority of the ALJ's reasons for discounting Mr. Geiger's findings were improper, and although the ALJ may not necessarily have erred in stating those findings were not inconsistent with the ability to perform sedentary work, also as discussed above this is irrelevant, as the ALJ in her current decision determined that plaintiff could perform

---

[9] Sedentary work is defined in the Social Security Regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). SSR 96-9p also provides in relevant part:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

1996 WL 374185 *3.

REPORT AND RECOMMENDATION - 14

at the light exertional level, which is contradicted by Mr. Geiger's findings. Lastly, while it does appear the ALJ erred in attributing the authorship of a late November 2005 letter to a vocational rehabilitation counselor, rather than to Dr. Johnson, wherein the latter indicated he agreed with Mr. Geiger's findings,[10] the ALJ did not err in discounting it for the reason that "there was no particular basis" therefor. AR 16. That is, the letter did not ask, and Dr. Johnson did not explain, the basis for his agreement with those findings. See Batson, 359 F.3d at 1195 (medical opinion need not be accepted if inadequately supported by clinical findings).

The undersigned finds the ALJ also erred in failing to discuss in her current decision a questionnaire completed by Dr. Johnson in early September 2007, which was submitted to the Appeals Council after the ALJ issued her first decision.[11] See AR 31-34. In that questionnaire,

---

[10] Defendant argues there is no basis for attributing the checked findings contained in the letter to Dr. Johnson, as there are no indicia – including a signature – that he was the one who checked them. But the undersigned finds the ALJ's attribution of those findings to someone other than Dr. Johnson to be neither reasonable nor rational. First, it was the vocational rehabilitation counselor who authored the letter asking for the checked findings, and to whom the ALJ apparently attributed the findings. See AR 436. Second, that letter was addressed to Dr. Johnson, and therefore the only reasonable and rational conclusion is that it was Dr. Johnson who responded to the request contained in the letter by checking the appropriate boxes. See id.

[11] Plaintiff also requests that the Court order defendant to correct the administrative record in this case by directing the addition thereto of a questionnaire completed by Leonard Albert, M.D., in late September 2010 – and submitted to the ALJ approximately two weeks prior to the ALJ's issuance of her most recent opinion – and that the Court find the ALJ's evaluation of the medical evidence in the record is not supported by substantial evidence in light of that questionnaire. See ECF #17. As pointed out by defendant, however, the Social Security Act merely grants the Court the "power to enter upon the pleadings and *transcript of the record*" – "a certified copy" of which ("including the evidence upon which the findings and decision complained of are based") is to be provided by defendant along with his answer – "a judgment affirming, modifying, or reversing *the decision of the Commissioner of Social Security*, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (emphasis added). Nothing in the language of 42 U.S.C. § 405(g) grants the Court the power to take any action with respect to additional evidence sought to be made part of the transcript of record, except as follows:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

Id. While plaintiff argues this Court should interpret the above language as allowing the Court to order defendant to "correct" the record in light of its generally recognized judicial authority to "say what the law is" and to "apply the [law] to particular cases," which "of necessity [requires] expound[ing] and interpret[ing] that [law]" (ECF #23, p. 2 (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1903)), such authority does not permit the Court to read into the governing statute judicial powers that are plainly not provided there. See National Association

REPORT AND RECOMMENDATION - 15

Dr. Johnson opined that plaintiff had not been able to engage in full-time sedentary, light or medium level work since his alleged onset date of disability, that his complaints were reasonably related to his degenerative disc disease diagnosis and that those complaints were credible. See AR 32-33. Defendant argues Dr. Johnson's opinions were consistent with the ALJ's assessment of plaintiff's residual functional capacity, and therefore the ALJ was not actually rejecting them. But whereas the ALJ only limited plaintiff to a modified range of light work in her most recent decision (see AR 542), Dr. Johnson clearly indicated he did not believe plaintiff could engage in even sedentary work. Defendant's argument thus lacks merit.

Lastly, plaintiff argues the following findings indicate the ALJ did not understand the chronology of his injuries:

> The record indicates that the claimant had some earnings in 2002 and 2003. At the first hearing, he had testified that he worked as a fisherman for about 5 weeks after his first back surgery. He testified that he quit when he re-injured his back. He had also performed some work in 2002-2003 laying pipe. He stated that his Doctor had told him to stop this type of work. As in my prior decision, I find that both of these were unsuccessful work attempts. Of note, the claimant performed both of these positions at exertional levels greater than that supported by the medical evidence, which indicates that his capabilities were greater than he has generally alleged.

---

of Manufacturers v. Taylor, 582 F.3d 1, 12 (D.C. Cir. 2009) (noting "Supreme Court has repeatedly emphasized that courts should" not reach beyond plain meaning of statute "to cloud a statutory text that is clear") (quoting Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994)); see also Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 457 (2002) (noting source material outside statutory provision "cannot [be used to] amend the clear and unambiguous language" thereof). Had Congress chosen to grant the Court such powers, it could easily have done so. Nor does anything in the above statutory language indicate such a grant should be inferred therefrom, and plaintiff has not cited any legal authority beyond Marbury to support his claim to the contrary here.

Accordingly, pursuant to the language of 42 U.S.C. § 405(g), this Court must treat the late September 2010 questionnaire completed by Dr. Albert as being "additional evidence," as that term is employed above. The parties disagree on whether evidence that apparently was received – as indicated by the facsimile transmission information set forth on the facsimile cover sheet provided by plaintiff (see ECF #17, p. 1) – but not considered by the ALJ, and thus not made part of the actual record, must be both new and material, and whether good cause must be established, as required by 42 U.S.C. § 405(g). None of the legal authority cited by either party directly addresses this issue, nor has the undersigned found any. Regardless, resolution of that issue is not necessary here given that the undersigned finds, for the reasons discussed elsewhere herein, that this matter should be remanded for the purpose of conducting further administrative proceedings in any event, upon which, to the extent deemed appropriate, the questionnaire Dr. Albert completed may be considered as well.

REPORT AND RECOMMENDATION - 16

AR 541. Specifically, plaintiff asserts he worked laying pipe prior to injuring his back and then reinjured his back while working as a fisherman. ECF #14, p. 6 (citing AR 512-13). Even if this was so, the undersigned finds any error harmless here, as plaintiff has not shown it impacted the ALJ's non-disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error committed by ALJ would not have affected ALJ's "ultimate decision.").

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

REPORT AND RECOMMENDATION - 17

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In her most recent decision, the ALJ discounted plaintiff's credibility because "[d]espite his reports of relatively serious problems, treating and examining physicians found only mild objective findings and observed no major difficulties of functioning during examinations." AR 543-44. A finding that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues, without any further explanation, that this basis for finding him not fully credible is not supported by substantial evidence and is based on the failure of the ALJ to evaluate the medical evidence in the record.

Again, plaintiff's lack of specific argument is wholly insufficient to challenge the ALJ's finding here. See Carmicle, 533 F.3d at 1161 n.2; Paladin Associates., Inc., 328 F.3d at 1164; Kim, 154 F.3d at 1000. Further, the record largely supports this finding, at least in regard to the period following plaintiff's second surgery in January 2004. See AR 544; see also AR 229, 243, 252, 333, 335, 347-49, 354-55, 360, 367, 375-79, 381-83, 385, 387, 395, 400-01, 413, 443-45, 449-51, 453, 455-60, 462-63, 476, 479, 494-95, 499, 664, 666, 668-74, 683-88. On the other hand, as discussed above, the ALJ did not properly consider the Mr. Geiger's findings regarding plaintiff's limitations or the early September 2007 opinion of Dr. Johnson concerning his ability to work. Thus, it cannot be reliably said the ALJ's reliance on the objective medical evidence to discount plaintiff's credibility was proper.

The ALJ also discounted plaintiff's credibility in part on the basis that he "did not receive the extent of medical treatment during the relevant period one would expect for a totally disabled individual," that "[h]is treatment was essentially conservative in nature" and that "the records reveal that this treatment was successful in controlling his objective symptoms." AR 544. These are valid reasons for discounting a claimant's credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, serious medical treatment for supposedly excruciating pain); Morgan, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility based on medical improvement); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

Plaintiff does not specifically challenge these reasons for discounting his credibility, and the undersigned finds them to be valid, again at least with respect to the period subsequent to his second surgery. See AR 173, 252-53, 332-33, 335, 339-41, 344, 346-49, 354-55, 357, 360, 367, 375, 377, 379, 381, 383, 385, 387, 389, 393, 395, 443-77, 479, 484-85, 487-89, 492-93, 665-66, 668-74, 683-84, 686, 688. Indeed, several medical sources, including both an examining psychologist and an examining physician, opined that "[a]ssuming good faith participation in [and follow through with a recommended multidisciplinary pain rehabilitation program]," it was anticipated that plaintiff "could improve his mood[, overall function] and coping [mechanisms around his pain], increase his physical capacities and [strength, and] clarify his vocational status

and options," and that "he should progress to a light to medium category of work." AR 498-500.

They even opined that it "would allow him to at least re-examine his potential to return to work in the fishing industry." AR 499.

As noted by the ALJ, although those medical sources so opined, they commented as well that "his frame of reference need[ed] to be that he want[ed] to improve for himself." AR 500, 547. Further, the medical sources observed that plaintiff "did not make a definitive commitment to participate" in the recommended program, and that his "apparent motivational ambivalence for program participation combined with his longstanding use of significant prescription pain medication," resulted in only a "somewhat guarded" prognosis "for a fully successful outcome as defined by returned to functional work status." AR 498-99, 547. This too was a valid basis for discounting plaintiff's credibility. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed treatment "can cast doubt on the sincerity of the claimant's pain testimony").

The ALJ also discounted plaintiff's credibility in part on the following basis:

> During the relevant period, the claimant's activities of daily living and social functioning were not limited to the extent one would expect given his complaints of disabling symptoms and limitations. At the prior hearing in 2007, the claimant had testified that he was able to perform daily activities such as washing dishes, doing laundry, some meal preparation, and occasional yard work. He also stated that because his wife works, about once a week he also would do some mopping, sweeping, and/or vacuuming around the house. He had also testified that he took his son out fishing and to sports activities to watch him play. He testified that he could walk up to one mile, and lift from 10-15 pounds. I note that this is consistent with the statements he made in his reports (see Exhibit 5E). Again, these activities are consistent with the residual functional capacity determination herein. At the remand hearing, the claimant testified that he was disabled given his chronic and very severe pain that renders him "very limited," especially in his ability to lift, stand, walk, and sit. However, this testimony at the remand hearing in 2010 is wholly inconsistent with his previous testimony at the 2007 hearing, which had been offered *during* the relevant period.

REPORT AND RECOMMENDATION - 20

AR 544 (emphasis in original).  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work skills." Id.  Second, they can "contradict his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.  But the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.  In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722.

The undersigned agrees with plaintiff that the evidence in the record fails to establish that he performed the above activities for a substantial part of the day or to an extent indicating they are transferrable to a work setting, or that those activities necessarily contradict his self-reports and testimony regarding his symptoms and limitations. See AR 94, 96-101, 108, 119, 122, 588-90, 595-99, 701-06, 713-17.  The undersigned further agrees with plaintiff that his testimony at the second hearing regarding his activities of daily living (see AR 701-06, 713-17), is largely consistent with the testimony he gave at the prior hearing (see AR 588-90, 595-99).  As such, the ALJ erred in relying on plaintiff's above daily activities to discount his credibility.

The undersigned finds the ALJ did not err, however, in discounting plaintiff's credibility for the following reasons:

> The claimant has provided other inconsistent statements in connection with his disability claim.  For example, he told his current physician, Leonard Albert, M.D., about some of his activities.  Yet, at the remand hearing, he flatly denied such activities.  In October 2009 he told Dr. Albert that he

REPORT AND RECOMMENDATION - 21

recently had a few days of left-sided chest pains "after helping to dress a deer" (Exhibit 35F, p. 7). At the hearing, the claimant insisted he did not say this and that he was merely present and watched while his ex-boss dressed the deer but "I did not help with that . . . I have not dressed a deer in the last 5 years." His denial is quite suspect given that these chest pains were the very reason for this particular visit with Dr. Albert, who in turn assessed a left pectoral strain. I am at a loss as to how someone merely watching could suffer such a strain. Similarly, in January 2010, he told Dr. Albert that "he is doing fairly well on his current medications" and that "he has been able to do some house remodeling" (Exhibit 35F, p. 3). Again, the claimant testified that this was not true stating, "I have not done any house remodeling." He stated that they needed to have a new roof put on their house but it was his brother-in-law [sic] did all of the work. I find it hard to credit his testimony given his statements in the treatment records. . . .

AR 544-45; see Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid").

Plaintiff's challenge to the above stated reasons for discounting his credibility reads as follows:

> The ALJ accuses [plaintiff] of making inconsistent statements because Dr. Albert wrote that [plaintiff] had chest pains "after helping to dress a dear," when in fact, as [plaintiff] and his wife testified, he has not gone hunting or dressed a deer since his injury. ([AR] 544-45, 699, 726). Also, Dr. Albert wrote that [plaintiff] "has been able to do some house remodeling," when in fact, as [plaintiff] and his wife testified, his wife's brother replaced their roof; [plaintiff] did not do any of the work ([AR] 545, 696-98, 724-28). Dr. Albert stated that he cannot remember what [plaintiff] told him, writing that he had "no recollection and must rely on my notes." ([AR] 734-35). Dr. Albert's apparently incorrect notes about these issues which were not related to his treatment of [plaintiff] are not a convincing reason to reject [plaintiff's] testimony about this issue or about any of his limitations.

ECF #14, pp. 19-20. But merely labeling Dr. Albert's notes as being "apparently incorrect" does not actually make them so. That is, it was completely reasonable and rational for the ALJ to find Dr. Albert correctly recorded what plaintiff told him at the time, rather than to believe plaintiff's

testimony and that of his wife offered in response to the ALJ's inquiry regarding the discrepancy between the two.

Nor does the undersigned find persuasive plaintiff's attempt to cast doubt on the accuracy of Dr. Albert's notes on this issue by describing them as being "not related" to his treatment of plaintiff. First, there is no actual evidence that Dr. Albert did not correctly record what was reported to him at the time. See AR 664, 668. Second, as pointed out by defendant, at the very least Dr. Albert's notes regarding dressing the deer do bear directly on the treatment he provided, as plaintiff, as noted by the ALJ, reported experiencing left-sided chest pain – the complaint for which he sought treatment from Dr. Albert – "after helping to dress a deer."[12] AR 668.

Plaintiff argues the ALJ erred in discounting his credibility on the basis that he had been found disabled by the Washington State Department of Labor and Industries. See AR 490. But the ALJ did not actually discount plaintiff's credibility on this basis, but rather found in relevant part as follows:

> . . . At the hearing, [plaintiff] stated that he receives a permanent monthly payment of about $2,400 a month from his Washington State Department of Labor and Industries (L&I) claim, admitting that this monthly amount is more than he has earned in his life from working. I find this fact to be a genuine concern given the claimant's non-compliance and inconsistencies; and certainly there is an added incentive to not be entirely forthcoming pending the results of this hearing which could award him additional monetary benefits. Thus, I find the claimant is motivated, at least partially, by secondary gain since it appears he is seeking additional benefits to use as an income without the burden of having to work . . . I acknowledge that L&I

---

[12] The late September 2010 questionnaire completed by Dr. Albert, which, as discussed above was submitted to the ALJ but not considered by her or included in the record, also does not help plaintiff here, even if it were to be found appropriate to remand this matter based on this additional evidence. In that questionnaire, Dr. Albert wrote that he had "no recollection" of what plaintiff told him regarding dressing a deer and house remodeling at the time, and that he therefore "must rely on [his] notes." ECF #17, pp. 4-5. However, this does not establish that Dr. Albert failed to properly record what was reported to him at the time, but that he cannot *now* recall what happened then. Indeed, this is likely the reason treating physicians such as Dr. Albert make such contemporaneous notes, as their memory of any particular treatment visit will tend to fade with time, especially if they see and care for more than one patient during the same period in question. Thus, Dr. Albert's answers actually tend to *add* to his credibility and the veracity of his prior recorded notes, and would not at all be likely to change the ALJ's adverse credibility determination.

REPORT AND RECOMMENDATION - 23

found the claimant disabled effective June 16, 2007. However, the Social Security Administration is not bound by disability determinations made by other agencies given the different rules and regulations governing the definition and assessment of disability (20 CFR 404.1504). In this case, I find that the medical record confirms the claimant can engage in light work, and thus the L&I determination is not persuasive. It is also important to note that the examining physicians and vocational counselors involved in the L&I claim had found that the claimant could return to work as a security guard, *but the claimant declined because he wanted to return to fishing*. This suggests that the claimant was indeed capable of at least light tasks and that his ongoing lack of work appears volitional and more related to his personal preference for an occupation than any objective functional restrictions.

AR 545-46 (emphasis in original). It is appropriate for an ALJ to consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell, 161 F.3d at 602; Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992); 20 C.F.R. § 404.1504.[13]

Plaintiff argues the ALJ failed to cite the specific portion of the record where he declined to return to work as a security guard because he wanted to return to fishing. However, the same medical sources who noted plaintiff's lack of desire to pursue a recommended pain rehabilitation program – which they concluded would enable him to "progress to a light to medium category of work" (AR 500), which appears to be consistent with the ability to perform the job of security guard that another examining physician did find him to be capable of doing for purposes of his L&I claim (see AR 404 ("He will not be able to do heavy work, but I think that he could do the work as a security guard, and I have approved [that] job analys[i]s")) – also expressly noted that plaintiff stated "his only return to work goal [was] fishing." AR 498. The secondary gain issue, plaintiff's lack of desire to participate in recommended treatment and apparent refusal to return to work in an area other than fishing, furthermore, supports the ALJ's finding that his "ongoing

---

[13] That regulatory provision provides in relevant part: "A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us."

lack of work appears volitional and more related to his personal preference," even if the ALJ did not, as discussed above, properly evaluate all of the medical evidence in the record and could not rely on that basis for discounting plaintiff's credibility. [14] AR 546.

Lastly, the ALJ discounted plaintiff's credibility in part because:

> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. At the hearing, he was able to sit with no apparent distress and stood only once after 25 minutes of sitting. This is contrary to his testimony that he has "very severe" pain that leaves him "very limited" in his ability to sit or stand. The evidence of record also does not support his testimony that his pain gets so bad at times that "it sends him to bed." In addition, despite the claimant's allegedly severe mental health symptoms, he did not appear depressed or have significant difficulty with understanding or concentrating at the hearing. While the hearing cannot be considered a conclusive indicator of the claimant's overall level of daily pain during the relevant period, the lack of significant discomfort during the hearing is given some weight in reaching the conclusion regarding the credibility of his allegations of pain, limitations, and residual functional capacity. It is emphasized that my observations at the hearing are only some among many being relied on in reaching a conclusion regarding the claimant's credibility. . . .

Id. An ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Inclusion of personal observations of the claimant in the ALJ's findings "does not render the decision improper." Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). However, the ALJ may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p, 1995 WL 670415 *2.

Plaintiff argues this was not a valid reason for discounting his credibility, stating that the ALJ had never met him in person, and that because only video hearings were held, it would have

---

[14] In addition, while it may be true that plaintiff ultimately was found to be disabled by L&I, this does not take away from the fact that plaintiff's secondary gain motivation, his self-report regarding returning to work and his apparent decision to not participate in the recommended pain rehabilitation program do indicate a lack of desire on his part to not return to work.

been difficult if not impossible for her to notice his discomfort at the hearing. But this is merely speculation on plaintiff's part. There is nothing in the record to indicate that the ALJ was not in a position to see and/or hear via video how plaintiff acted and testified at both hearings in order to accurately observe his behavior at those times. In addition, as discussed above, this was not the only valid reason the ALJ put forth for discounting plaintiff's credibility. Accordingly, the ALJ overall did not err in doing so.[15]

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In regard to the lay witness evidence in the record, the ALJ found as follows:

The claimant's wife, Gail McGovern, also testified at the remand hearing. She admitted that Counsel had made her aware of the claimant's statements to Dr. Albert. In direct response, she testified that that [sic] her brother put the new roof on their house because her husband could not do it. She stated that he has done "some painting" but has not been able to do any remodeling or go deer hunting in years. She testified that he "does not feel good" and although he tries, he cannot do things anymore, including do things with their son. She

---

[15] While, also as discussed above, the ALJ erred in relying on the medical evidence in the record and on plaintiff's activities of daily living in finding him to be not fuly credible, the fact that one or more of the stated reasons for discounting plaintiff's credibility was improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed above. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (although ALJ relied on improper reason to discount credibility of claimant, he presented other valid, independent bases for doing so, each with "ample support in the record").

stated there were times when the claimant's pain was so bad that he would remain in bed. She stated that since 2002, they have tried to travel but it was short-lived due to the claimant's severe pain. She also stated that medications have not helped much and "his system" did not tolerate Methadone. She stated that the claimant used to be very active before the accident but now he gets up in the morning, stretches, gets dressed, and then goes to his chair to sit and nap throughout the day. She stated that he might go into to [sic] town to check the mail but other than that, "his life is not exciting." I give little weight to the testimony of this lay witness because it is inconsistent with the evidence of record and she has a vested monetary interest in the [sic] helping the claimant obtain additional benefits. . . .

AR 545. The undersigned disagrees with plaintiff it was inappropriate for the ALJ to reject his wife's testimony on the basis that she had "a vested monetary interest" in helping him. Family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to those symptoms and activities. See Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). In Sprague v. Bowen, 812 F.2d 1226 (9th Cir. 1987), the Ninth Circuit indicated that the existence of a "close relationship" between the lay witness and the claimant, and the potential to be "influenced" by the "desire to help," can be viewed as being "germane" to that particular lay witness. Id. at 1232 (citing 20 C.F.R. § 404.1513(e)(2)). Later, in Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), the Court of Appeals again found the ALJ in that case properly considered the close relationship between the claimant and his girlfriend, and the possibility that she might have been influenced by the desire to help him. Id. at 972.

In Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), however, the Ninth Circuit reiterated its position that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." Id. at 1116 (quoting Dodrill, at 1918-19. The Court of Appeals did note its prior decision in Gregor, but nevertheless went on to find the ALJ erred in rejecting the lay witness testimony in Bruce on the basis of that witness's close relationship with the claimant, without explaining this difference in its two rulings. See id.

(citing 464 F.3d at 972). The only explanation the undersigned can glean from those rulings is that in Greger there seems to have been at least some evidence – though the Ninth Circuit did not discuss exactly what that evidence was – of the lay witness "possibly" being "influenced by her desire to help" the claimant in addition to the "close relationship" she had with him (464 F.3d at 972) – while in Bruce, no such evidence existed.

Not surprisingly, plaintiff relies on Bruce in arguing the ALJ erred here. More recently in Valentine v. Commissioner of Social Security, 574 F.3d 685 (9th Cir. 2009), however, the Ninth Circuit stated that "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." Id. at 694 (emphasis in original). Here, the ALJ cited such specific evidence, noting, as discussed above, plaintiff's wife's testimony that plaintiff did not in fact injure himself dressing a deer or do house remodeling, which was directly contrary to the recorded notes of Dr. Albert. Therefore, the undersigned finds the ALJ properly attributed a secondary gain motive to plaintiff's wife.

On the other hand, while an ALJ may reject lay witness evidence if other evidence in the record is inconsistent therewith, it is not entirely clear such is the case with the testimony given by plaintiff's wife. See Carmickle, 533 F.3d at 1164 (ALJ properly rejected lay witness evidence, as it was inconsistent with claimant's successful completion of continuous full-time coursework constituted reason germane to claimant). This is because it is largely consistent with plaintiff's own testimony, and because while the ALJ, as discussed above, properly evaluated the majority of the medical evidence in the record concerning plaintiff's impairments, she did not do so with respect to the findings of Mr. Geiger or the early September 2007 opinion of Dr. Johnson, which as discussed below call into question the accuracy of the ALJ's assessment of plaintiff's RFC, as

well as her determination that plaintiff can perform other jobs existing in significant numbers in the national economy, and thus her finding of non-disability. Nevertheless, as just discussed, the ALJ did provide a valid, germane reason for rejecting the testimony of plaintiff's wife, namely her secondary gain motivation.

V.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity:

**. . . to perform light work . . . He could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with no repetitive bending and twisting. He should change positions every 20-30 minutes. He could perform jobs that did not rely on reading**

REPORT AND RECOMMENDATION - 29

**or writing to perform the work and would have only occasional difficulties in maintaining concentration, persistence, and pace.**

AR 542 (emphasis in original). Plaintiff argues the ALJ erred in assessing the above RFC by not including all of his postural and non-exertional limitations. The undersigned agrees that since, as discussed above, the ALJ failed to properly consider Mr. Geiger's findings and the early September opinion of Dr. Johnson, it is not entirely clear that the ALJ's assessment of plaintiff's residual functional capacity accurately describes all of his physical limitations. As such, the ALJ erred here.

VI.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the most recent hearing, the ALJ posed a hypothetical question to the vocational

REPORT AND RECOMMENDATION - 30

expert containing a limitation to light work and to no required reading and writing, but did not include any of the other limitations that were set forth in the ALJ's residual functional capacity assessment. See AR 542, 721. On that basis alone, the undersigned agrees with plaintiff that the ALJ erred in relying on the testimony provided by the vocational expert in response to the ALJ's hypothetical question to find plaintiff not disabled at step five. In addition, in light of the ALJ's failure to properly consider Mr. Geiger's findings and the early September 2007 opinion of Dr. Johnson – and therefore her error in assessing plaintiff's RFC –the ALJ's step five determination cannot be upheld on this basis as well.

Plaintiff argues he should be found disabled at this step, because when the vocational expert was posed a hypothetical question that included an inability to make it through an eight-hour day without having to lie down to relieve pain, the vocational expert testified that such an individual would not be able to maintain competitive employment. See AR 722. But the record does not support such a limitation, and indeed the alleged need to lie down to relieve pain seems to be based entirely on plaintiff's own testimony and self-reports, with respect to which the ALJ found, as discussed above, plaintiff was not fully credible. Accordingly, plaintiff's argument on this issue is rejected.

VII.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

REPORT AND RECOMMENDATION - 31

award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's physical limitatations, and accordingly in regard to his residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate in this case.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned therefore recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 32

is directed set this matter for consideration on **March 16, 2012**, as noted in the caption.

DATED this 1st day of March, 2012.

Karen L. Strombom
United States Magistrate Judge